UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL ODOMS AND<br>ERICKA ODOMS | CIVIL ACTION |
| | NO. 19-12477 |
| VERSUS | |
| | SECTION M (4) |
| GEOVERA SPECIALTY INSURANCE<br>COMPANY AND SUSAN ANGELICA<br>INSURANCE AGENCY, LLC | |

### **ORDER & REASONS**

Before the Court is a motion by plaintiffs Michael Odoms ("Odoms") and Ericka Odoms ("Ericka") (collectively, "Plaintiffs") to remand this action to the 24th Judicial District Court, Parish of Jefferson, State of Louisiana, for lack of subject-matter jurisdiction.[1] Defendant GeoVera Specialty Insurance Company ("GeoVera") opposes the motion,[2] and Plaintiffs reply in further support of the motion.[3] Having consider the parties' memoranda, the record, and the applicable law, the Court finds that it has diversity subject-matter jurisdiction because the minimum amount in controversy is satisfied and GeoVera, the properly joined defendant, and Plaintiffs are citizens of different states. Thus, remand is not warranted.

**I. BACKGROUND**

This matter concerns a disputed claim made on a homeowners insurance policy. On June 21, 2018, Odoms, who is a citizen of Louisiana, entered into an agreement to purchase a property located at 6565 Benedict Drive in Marrero, Louisiana.[4] As a result, Odoms contacted defendant Susan Angelica Insurance Agency, LLC ("SAIA"), which is also a Louisiana citizen, to procure

---

[1] R. Doc. 9.
[2] R. Doc. 11.
[3] R. Doc. 14.
[4] R. Doc. 1-2 at 1.

a tenant-occupied homeowners insurance policy for the property.[5] Odoms advised SAIA of his insurance needs and alleges that he answered truthfully all questions asked by SAIA.[6] According to Odoms, SAIA did not ask him some "important questions and substituted its own answers and judgment for" his when filling out the insurance application.[7] All of the underwriting questions were answered in the negative, including one inquiring whether the "applicant, co-applicant, spouse or domestic partner had or been involved in a … bankruptcy during the past 5 years," and one asking if the property was "without public utility services."[8] Odoms signed the insurance application on June 21, 2018, thus acknowledging that he had "read the above applications and any attachments and declare[d] that the information is true and complete" and that the "information [was] being offered to the company as an inducement to issue the policy for which [he was] applying."[9]

Based on Odoms's answers to questions posed in the insurance application, GeoVera issued a tenant-occupied homeowners insurance policy for the Benedict Drive property for the term of June 21, 2018, to June 21, 2019.[10] The policy provided dwelling coverage in the amount of $129,000, along with coverage limits of $12,900 for other structures, $6,450 for personal property, and $12,900 for loss of use.[11]

On July 21, 2018, the Benedict Drive property was damaged by a fire.[12] Odoms promptly filed a claim with GeoVera.[13] GeoVera required Odoms to provide sworn testimony at

---

[5] *Id.* at 1-2; R. Doc. 9-3 at 113.
[6] R. Doc. 1-2 at 2.
[7] *Id.*
[8] R. Doc. 9-3 at 114.
[9] *Id.* at 115.
[10] R. Doc. 1 at 8.
[11] *Id.*
[12] R. Doc. 1-2 at 1.
[13] *Id.* at 2.

two examinations under oath ("EUO").[14] At the December 19, 2018 EUO, Odoms testified that he and Ericka began dating in 2008 or 2009 and married in October 2013.[15] The examiner asked Odoms questions about several insurance applications he and/or Ericka made with GeoVera through SAIA, including the one for the Benedict Drive property.[16] The insurance application for a property located at 1929 Watling Drive, which Odoms signed on August 22, 2016, was the first of the series.[17] Odoms testified that he participated in applying for the insurance, SAIA explained the underwriting questions to him, he answered the questions, and he signed the application.[18] With respect to the bankruptcy question, Odoms testified that he was aware that Ericka was making payments on debts related to a bankruptcy until October 2015, and that answering "no" to the bankruptcy underwriting question was incorrect.[19] Indeed, Odoms acknowledged that the bankruptcy question was incorrectly answered in the negative on all seven insurance applications that were discussed in the EUO, including the insurance application for the Benedict Drive property.[20] Odoms further testified that he had no reason to believe that SAIA made up the answers to the underwriting questions and that, if he signed the application, he provided the answers to the best of his ability.[21]

On February 26, 2019, GeoVera wrote to Odoms informing him that it "has determined it has no duty to indemnify" Odoms because he submitted false answers on the insurance application for the Benedict Drive property.[22] GeoVera noted that Odoms and Ericka submitted several insurance applications in which one, or both, of them affirmed that neither of them was

---

[14] *Id.*
[15] R. Doc. 9-4 at 2.
[16] *Id.* at 3-8.
[17] *Id.* at 3; R. Doc. 9-3 at 95-97.
[18] R. Doc. 9-4 at 3-4.
[19] *Id.* at 4-5.
[20] *Id.* at 5-8.
[21] *Id.* at 8.
[22] *GeoVera Specialty Ins. Co. v. Odoms*, C/A No. 19-1899 (E.D. La.), R. Doc. 16-2 at 100-04.

"involved in" a bankruptcy proceeding in the previous five years, when in fact, they both knew that Ericka was making payments on a bankruptcy plan until October 2015.[23] Further, GeoVera stated that Odoms falsely represented that the Benedict Drive property was connected to public utilities, when in fact, the property did not have water or gas, and the electricity was obtained via an illegal meter attached by the squatters who previously occupied the property.[24] Thus, GeoVera denied coverage under the "concealment or fraud" clause which states that the insurer does not provide coverage to an insured who made false statements related to the insurance, whether before or after the loss.[25] GeoVera further stated that it would not have issued the policy if Odoms had provided accurate information in the insurance application.[26]

On March 1, 2019, GeoVera filed in this Court a declaratory judgment action against Odoms, *GeoVera Specialty Insurance Co. v. Odoms*, C/A No. 19-1899 (E.D. La.), seeking a declaration: (1) that Odoms provided false information in the insurance application, and (2) allowing recession of the insurance policy based on the false statements contained in the insurance application.[27]

Thereafter, on July 26, 2019, Plaintiffs filed the instant action in the 24th Judicial District Court, Parish of Jefferson, State of Louisiana, naming GeoVera and SAIA as defendants. Against GeoVera, Plaintiffs allege claims for breach of the insurance contract, bad faith, and invasion of privacy.[28] With respect to SAIA, Plaintiffs allege that Odoms relied on SAIA's experience to procure the proper insurance and that any misrepresentations of fact in the insurance application were due to SAIA's actions or inactions.[29] Thus, Plaintiffs allege that

---

[23] *Id.* at 101.
[24] *Id.*
[25] *Id.* at 102-03.
[26] *Id.* at 104.
[27] *GeoVera Specialty Ins. Co. v. Odoms*, C/A No. 19-1899 (E.D. La.), R. Doc. 1.
[28] R. Doc. 1-2.
[29] *Id.* at 2-3.

SAIA breached a contract to procure proper insurance, was negligent in procuring the insurance, and breached its duty to use reasonable diligence in procuring insurance, and that Odoms detrimentally relied on SAIA's representations that the insurance application was completed correctly and that the insurance was secured.[30]

GeoVera removed the state court action to this Court alleging diversity subject-matter jurisdiction under 28 U.S.C. § 1332.[31] GeoVera alleges that complete diversity exists between Plaintiffs, who are Louisiana citizens, and itself, a citizen of Delaware and California.[32] GeoVera contends that SAIA's Louisiana citizenship does not destroy complete diversity because it was improperly joined.[33] GeoVera further alleges that the amount in controversy threshold of $75,000 is met because Plaintiffs seek the full value of the property damage, plus attorney's fees and penalties for bad faith.[34]

## II. PENDING MOTION

Plaintiffs filed the instant motion to remand arguing that SAIA was not improperly joined.[35] Plaintiffs argue that Odoms has cognizable causes of action against SAIA for negligence, breach of contract, failure to use reasonable diligence in procuring insurance, and detrimental reliance that can withstand either a motion to dismiss or a motion for summary judgment.[36]

Odoms contends that SAIA was negligent in that it failed to use reasonable diligence in placing the insurance and answered some of the underwriting questions on its own without

---

[30] *Id.* at 2-4.
[31] R. Doc. 1 at 1.
[32] *Id.* at 3.
[33] *Id.* at 4-7.
[34] *Id.* at 7-8.
[35] R. Doc. 9.
[36] R. Doc. 9-1 at 7-16.

consulting him.[37] Similarly, Odoms urges that SAIA breached a contract to procure insurance because GeoVera seeks to rescind the policy based on inaccurate answers in the insurance application.[38] Odoms further argues that SAIA breached a duty to use reasonable diligence in procuring insurance because SAIA did not procure enforceable insurance and did not inform him of this fact.[39] Finally, Odoms argues that he has stated a claim for detrimental reliance against SAIA because he relied on SAIA's representation that the insurance application was completed correctly and that adequate insurance was procured.[40] Plaintiffs argue that all of these allegations against SAIA would withstand a summary-judgment inquiry because there are disputed issues of material fact regarding whether Odoms intentionally failed to include information about Ericka's bankruptcy on the insurance application considering that he now contends he did not understand that Ericka's payments on the bankruptcy plan constituted "involvement" with a bankruptcy proceeding.[41]

GeoVera argues that SAIA was improperly joined because Odoms has not stated any viable claims against SAIA.[42] GeoVera argues that Odoms's claims against SAIA are foreclosed as a matter of law because SAIA procured the insurance requested.[43] GeoVera further contends that Odom's sworn testimony in the EUO that he knew about his wife's bankruptcy, answered the application questions, and signed the application, contradicts the allegations in the complaint, and the Court must rely on the sworn testimony, rather than unsworn allegations.[44] Further, by signing the insurance application, Odoms acknowledged that he knew its contents and attested to

---

[37] *Id.* at 8.
[38] *Id.* at 8-9.
[39] *Id.* at 11-12.
[40] *Id.* at 9-10.
[41] *Id.* at 12-16.
[42] R. Doc. 11.
[43] *Id.* at 13-17.
[44] *Id.* at 5-12.

6

their truthfulness.[45] Finally, GeoVera argues that SAIA cannot be held liable for breach of contract because it fulfilled its duty to procure insurance.[46]

### III. LAW & ANALYSIS

#### A. Remand Standard

A defendant may remove from state court to the proper United States district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446 (b)(3). Because federal courts have limited jurisdiction, the removal statute is strictly construed, and any ambiguities are construed against removal and in favor of remand. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The party seeking removal has the burden of establishing that federal jurisdiction exists and that removal was proper. *Id.*

#### B. Improper Joinder

Pursuant to § 1332, a federal court may exercise diversity subject-matter jurisdiction "over a civil action between citizens of different States if the amount in controversy exceeds $75,000." *Flagg v. Stryker Corp.*, 819 F.3d 132, 135 (5th Cir. 2016). There must be complete diversity between the parties, meaning that no plaintiff may be a "citizen of the same State as any defendant." *Id.* at 136.

Section 1441(b)(2) permits a defendant to "remove a case from state court to federal court on the basis of diversity jurisdiction so long as none 'of the parties in interest properly

---

[45] *Id.* at 17-19.
[46] *Id.* at 19-21.

7

joined and served as defendants is a citizen of the State in which such action is brought.'" *Wolf v. Deutsche Bank Nat'l Tr. Co. for Am. Home Mortg. Inv. Tr. 2007-1*, 745 F. App'x 205, 207 (5th Cir. 2018) (quoting 28 U.S.C. § 1441(b)(2); citing *Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017)). However, the lack of complete diversity will not render an action non-removable if a party has been improperly joined. *Id.* Instead, if a "plaintiff improperly joins a non-diverse defendant, ... the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant." *Flagg*, 819 F.3d at 136. The defendant can demonstrate improper joinder by showing either: "'(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'"[47] *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013) (quoting *McKee v. Kan. City S. Ry. Co.*, 358 F.3d 329, 333 (5th Cir. 2004)). The improper joinder doctrine is a "'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.'" *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citing *McDonal v. Abbott Labs.,* 408 F.3d 177, 183 (5th Cir. 2005)).

"Under the second prong (inability to establish a cause of action), the court must determine whether 'there is arguably a reasonable basis for predicting that state law might impose liability.'" *Id.* (quoting *Ross v. Citifin., Inc.*, 344 F.3d 458, 462 (5th Cir. 2003)). "This means that there must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Ross*, 344 F.3d at 462 (emphasis in original).

In *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568 (5th Cir. 2004), the Fifth Circuit explained the procedure used by courts to determine whether a plaintiff improperly

---

[47] GeoVera does not allege that Plaintiffs committed actual fraud in pleading the jurisdictional facts. *See* R. Doc. 1. Hence, only the second prong of the test for improper joinder is at issue in this case.

joined a non-diverse defendant. A court first looks "at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant," and "[o]rdinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* at 573. However, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder … the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* The Fifth Circuit "caution[ed] that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573-74. In conducting such an inquiry, the district court may "consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003) (citations omitted). Further, "[a]ny contested issues of fact and any ambiguities of state law must be resolved in [the plaintiff's] favor." *Id.* (citation omitted).

Odoms's claims for breach of contract, negligence, failure to use reasonable diligence, and detrimental reliance that the policy was secured, are not truly separate claims, but really one claim that SAIA breached its alleged duty to procure adequate insurance coverage for the Benedict Drive property. *See Cormie's Grocery & Deli, Inc. v. Colony Ins. Co.*, 2012 WL 2906634, at *3 (W.D. La. July 16, 2012) (finding that similar claims, including detrimental reliance, fall within the scope of the risk of the agent's alleged breach of its duty to procure adequate insurance coverage, and whether the agent owed such a duty to the plaintiff). In Louisiana, "an insurance agent owes a duty of 'reasonable diligence' to [its] customer" which "is fulfilled when the agent procures the insurance requested." *Isidore Newman Sch. v. J. Everett*

9

*Eaves, Inc.*, 42 So. 3d 352, 356 (La. 2010) (citations omitted). "[A]n insured has a valid claim against the agent when the insured demonstrates that: 1) the insurance agent agreed to procure the insurance; 2) the agent failed to use 'reasonable diligence' in attempting to procure the insurance and failed to notify the client promptly that the agent did not obtain insurance[;] and 3) the agent acted in such a way that the client could assume he was insured." *Id.* at 356-57 (quotations marks and citation omitted). Accordingly, the insured has the responsibility to request the type and amount of insurance coverage needed, whereas the agent has no "obligation to spontaneously or affirmatively identify the scope or amount of insurance coverage the client needs." *Id.* at 359.

Odoms cannot maintain a claim that SAIA breached its duty to procure the insurance requested, and by extension, nor can he maintain similar breach of contract, negligence, or detrimental reliance claims. The record establishes that Odoms requested that SAIA obtain a tenant-occupied homeowners insurance policy for the Benedict Drive property, which is exactly what SAIA did. There is no allegation that SAIA obtained the wrong type of policy on Odoms's behalf or failed to account for a known relevant history in making insurance recommendations. The critical issue in this case is not the procurement of the policy, but rather whether there were material misrepresentations made in the insurance application as would result in rescission of the policy. *See Veal v. Primerica Life Ins. Co.*, 2019 WL 4674603, at *4 (W.D. La. July 9, 2019) (plaintiff could not maintain claim for breach of duty to procure insurance against the agent when the insurance was procured, and the real issue was the insurer's contention that there were material misrepresentations in the insurance application which resulted in rescission of policy).

Odoms also alleges a detrimental reliance claim against SAIA based on his alleged reliance on SAIA's representations that the insurance application was completed correctly. Louisiana Civil Code article 1967 explains the theory of determinantal reliance as follows:

> A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.

"The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." *Suire v. Lafayette City-Par. Consol. Gov't*, 907 So. 2d 37, 59 (La. 2005) (internal quotation marks and citations omitted). To prevail on a detrimental reliance claim, a plaintiff must prove: (1) the defendant made a representation by conduct or word; (2) the plaintiff justifiably relied on that representation; and (3) the plaintiff changed his position to his detriment because of the justifiable reliance. *Id.* (citations omitted).

Odoms cannot prevail on a detrimental reliance claim against SAIA related to the answers provided in the insurance application because there is no justifiable reliance on Odoms's part. By signing the insurance application, Odoms acknowledged that he read it and affirmed that all answers provided were true. He also testified at his EUO that he provided the answers to the original insurance application and signed all of them knowing that Ericka was involved in a bankruptcy within the last five years prior to the application. He acknowledged that answering "no" to the bankruptcy underwriting question was incorrect. Odoms further testified that he read the application and had the responsibility to ensure that the information provided therein was accurate. Thus, he cannot have justifiably relied on a representation by SAIA that the information was correct. *Cf. Security 1st Nat'l Bank v. Progressive Cas. Ins. Co.*, 30 F.3d 1491,

11

1994 WL 397946, at *3 (5th Cir. July 18, 1994) (largely because insurance application was signed by insured, court rejected insured's argument that intent to deceive was not established where insurance agent had completed application containing false statements); *Sacks v. Allstate Prop. & Cas. Ins. Co.*, 2018 WL 1409269, at *3 (E.D. La. Mar. 21, 2018) ("a party who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that she did not read it, that she did not understand it, or that the other party failed to explain it to her) (citation and internal brackets omitted).

Because Odoms cannot maintain any claims against SAIA under Louisiana law, SAIA was improperly joined.[48]

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' motion to remand (R. Doc. 9) is DENIED.

IT IS FURTHER ORDERED that Odoms's claims against SAIA are DISMISSED with prejudice.

New Orleans, Louisiana, this 14th day of November, 2019.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE

---

[48] Plaintiffs make a passing reference that remand is warranted because GeoVera failed to obtain SAIA's consent to removal. Improperly joined defendants, however, need not consent to removal. *See Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).

12